# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| KIERA JOHNSON | CIVIL ACTION |
|---|---|
| VERSUS | NO: 16-570 |
| LASHIP, LLC, ET AL | SECTION "H"(1) |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 53). For the following reasons, the Motion is GRANTED IN PART.

## BACKGROUND

This employment discrimination case arises from Plaintiff Kiera Johnson's work for Defendant LaShip, LLC ("LaShip"). On September 3, 2014, Plaintiff first began working for LaShip as a roustabout, performing general labor related to shipyard operations. Plaintiff primarily cleaned around the shipyard and its offices. Plaintiff was terminated on November 3, 2014 by Defendant Greg Adams, the shipyard manager, following a verbal altercation with another employee. On November 24, 2014, Adams rehired Plaintiff.

1

Plaintiff alleges that Adams began sexually harassing her on February 10, 2015, after assigning Plaintiff to clean his office. Plaintiff alleges that Adams told her that she was pretty, told her that he wanted to perform oral sex on her, and grabbed Plaintiff's buttocks and vagina. Plaintiff alleges that for several months Adams continued to make unwanted sexual advances, demand sex, offer preferential treatment in exchange for sex, expose his genitals to Plaintiff, touch Plaintiff sexually without consent, and force Plaintiff to touch his genitals. Plaintiff alleges that in February and March of 2015 she informed her immediate supervisor, Tylone Johnson, of the harassment.[1]

In late March or Early April of 2015, Defendant Adams reassigned Plaintiff to work as the secretary for Andre Belanger and raised her pay from $10 to $11 per hour. Plaintiff alleges that Adams's harassment and touching continued while she worked as a secretary. Plaintiff also alleges that she informed Belanger of the harassment. In May of 2015, Adams reassigned Plaintiff to work as a roustabout again. Defendants maintain that they reassigned Plaintiff because she used Belanger's cell phone to take a picture of herself without permission. Plaintiff alleges that she was reassigned in retaliation for refusing Adams's harassment.

Plaintiff states that Defendant Adams stopped sexually harassing and battering Plaintiff once she was transferred back to roustabout duties, but alleges that he then began to incessantly ask Plaintiff whether she had told anyone about his conduct. About two weeks after returning to roustabout duties, Plaintiff stopped coming to work, terminating her employment with LaShip.

---

[1] Plaintiff and Tylone are not related.

Plaintiff's Complaint asserts claims for 1) sexual harassment in violation of 42 U.S.C § 1981; 2) the maintenance of a hostile work environment and *quid pro quo* sexual harassment, constituting sex discrimination in violation of 42 U.S.C. § 2000e ("Title VII"); 3) retaliation for opposing or reporting sexual harassment, in violation of Title VII; 4) the maintenance of a hostile work environment and *quid pro quo* sexual harassment, constituting sex discrimination in violation of Louisiana Revised Statutes § 23:332(A)(1); 5) retaliation for opposing or reporting sexual harassment, in violation of Louisiana Revised Statutes § 23:332(A)(2); 6) the violation of Louisiana Revised Statutes § 14:43.1 and 14:43.1.1, criminal prohibitions against sexual battery; 7) intentional infliction of emotional distress by Defendant Adams; 8) the vicarious liability of Defendant LaShip for the intentional torts of Adams, and 9) Defendant LaShip's own negligence in its failure to train, supervise, and investigate.[2]

Defendants now move for summary judgment A) that sexual harassment is not a cognizable claim under § 1981; B) that LaShip has no vicarious liability for Plaintiff's Title VII or state law harassment claims pursuant to the *Ellerth/Faragher* affirmative defense;[3] C) that Plaintiff's Title VII and state law retaliation claims are barred for her failure to exhaust administrative remedies; D) that Plaintiff fails to state a Title VII retaliation claim; E) that Plaintiff's claims for back or front pay under Title VII are tolled because LaShip offered to reinstate Plaintiff; F) dismissing Plaintiff's claims for sexual harassment and battery under state criminal statutes; G) that Plaintiff's sole remedy for the negligence of LaShip is the Louisiana Workers' Compensation

---

[2] Doc. 11.
[3] *See* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998).

Act; H) that LaShip is not vicariously liable for the intentional torts of Adams because he acted outside the scope of his employment; and I) that the facts as alleged by Plaintiff fail to meet the bar for intentional infliction of emotional distress. Plaintiff opposes most, but not all, of Defendants' motion. The Court will address each of the grounds for summary judgment in turn.

## LEGAL STANDARD

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[7] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8] "In response to a properly supported motion for summary judgment, the nonmovant must

---

[4] FED. R. CIV. P. 56 (2012).
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[6] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[7] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

4

identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[9] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

When a motion for summary judgment is unopposed the court may not grant the motion by default, but is entitled to accept as undisputed the facts it presents.[12] "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[13] Instead, the proper inquiry to an unopposed motion for summary judgment is to determine whether the facts advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment.[14]

## LAW AND ANALYSIS

### A. Sexual Harassment Claim Under § 1981

Sexual harassment and discrimination are not cognizable under 42 U.S.C. § 1981, which prohibits only racial discrimination.[15] Plaintiff has not alleged that she was discriminated against because of her race, and conceded

---

[9] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[12] Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).
[13] Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006).
[14] *See id.*; *Eversley*, 843 F.2d at 174.
[15] Bobo v. ITT, Cont'l Baking Co., 662 F.2d 340, 345 (5th Cir. 1981).

5

so at oral argument. Accordingly, Plaintiff's claims under § 1981 are dismissed with prejudice.

**B. Vicarious Liability Under Title VII and La. R.S. § 23:332(A)(1)**

Defendant LaShip moves for summary judgment that it has no vicarious liability under either Title VII or state law for Defendant Adams's sexual harassment pursuant to the *Ellerth/Faragher* affirmative defense because Plaintiff failed to take advantage of the opportunities that LaShip provided to prevent or correct the alleged harassment.[16] There are two types of sexual harassment claims, those for the creation of a hostile work environment and those for "*quid pro quo*" harassment.[17] The distinguishing factor between the two is whether the plaintiff suffered a tangible employment action.[18] If so, the suit is a *quid pro quo* case; if not, it is a hostile environment case.[19]

In *quid pro quo* cases, the employer will be vicariously liable if the plaintiff can prove that "the tangible employment action suffered by the employee resulted from his acceptance or rejection of [her] supervisor's alleged sexual harassment."[20] Once the plaintiff establishes such a nexus, "no affirmative defense will be heard."[21]

Plaintiff here contends that she suffered two tangible employment actions: a demotion from the position of secretary to roustabout and constructive discharge. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant

---

[16] While Defendants Adams and LaShip filed the Motion for Summary Judgment jointly, the Court observes that this particular ground for summary judgment would only benefit Defendant LaShip.
[17] Casiano v. AT&T Corp., 213 F.3d 278, 283–84 (5th Cir. 2000).
[18] *Id.* at 283.
[19] *Id.*
[20] *Id.*
[21] *Id.*

change in benefits."[22] An employee has suffered constructive discharge when "a 'reasonable employee would feel compelled to resign' under the circumstances."[23] Constructive discharge requires a level of harassment greater than the minimum required to prove a hostile working environment.[24] Factors relevant to whether a reasonable employee would feel compelled to resign include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[25]

The employer's response to reports of sexual harassment can also be relevant.[26]

Questions of material fact exist as to whether Plaintiff's reassignment from working as a secretary to a roustabout constituted a significant change in employment status—including whether the jobs require significantly different responsibilities—and as to the reason for the reassignment. Therefore, questions of material fact exist as to whether Plaintiff suffered a tangible employment action. Defendant LaShip is not entitled to summary judgment on an affirmative defense when questions of fact exist as to whether it may assert the defense in the first place.

Even if Plaintiff did not suffer a tangible employment action, therefore allowing LaShip to assert the *Ellerth/Faragher* defense, questions of material

---

[22] La Day v. Catalyst Tech., Inc., 302 F.3d 474, 481–82 (5th Cir. 2002) (quoting *Ellerth*, 524 at 761).
[23] Noack v. YMCA of Greater Houston Area, 418 F. App'x 347, 352 (5th Cir. 2011) (per curiam) (quoting Stover v. Hattiesburg Pub. Sch. Dist., 549 F.3d 985, 991 (5th Cir. 2008)).
[24] *Stover*, 549 F.3d at 991.
[25] *Id.*
[26] *See* Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A., 139 F.3d 532, 539 (5th Cir. 1998) *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

7

fact remain that preclude summary judgment. A claim for sexual harassment without a tangible employment action is a hostile environment case. To set forth a prima facie hostile environment case, a plaintiff must show, "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment."[27] "To affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'"[28]

Against a hostile environment claim, an employer may use the *Ellerth/Faragher* affirmative defense to avoid vicarious liability for the conduct of its employees by showing that "(1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."[29] As to the first prong, an employer generally exercises reasonable care when it "provide[s] a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense."[30] As to the second prong, an employee generally must take advantage of a reasonable reporting process before resigning and may be required to make multiple attempts to report sexual harassment.[31]

---

[27] Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 479 (5th Cir. 2008) (quoting Lauderdale v. Tex. Dep't of Criminal Justice, 512 F.3d 157, 163 (5th Cir. 2007)).
[28] *Id.* (quoting *Lauderdale*, 512 F.3d at 163).
[29] *Casiano*, 213 F.3d at 284.
[30] Giddens v. Cmty. Educ. Centers, Inc., 540 F. App'x 381, 389 (5th Cir. 2013) (per curiam) (quoting *Faragher*, 524 U.S. at 807).
[31] *See id* at 391; *Lauderdale*, 512 F.3d at 164–65.

Here, Defendant LaShip maintains a mechanism for collecting and addressing reports of sexual harassment that is detailed in a written policy. The policy states, in part,

> All employees of Chouest Companies are responsible for helping to assure that we avoid discrimination, harassment and retaliation. If, as an employee of one of the Chouest Companies, you have been subjected to any type of discrimination, harassment, or retaliation, it is your responsibility to notify someone who can address this issue. All complaints regarding harassment, discrimination or retaliation by any supervisor, manager or fellow employee should be immediately reported to the Chouest Fraud and Abuse Hotline, via phone at (866) 925-5161 or online at chouest.ethicspoint.com.[32]

Plaintiff signed employment forms explicitly acknowledging the policy multiple times.[33] Plaintiff argues that LaShip has not met its burden to show that it took reasonable care to prevent and correct harassment because Plaintiff says that she does not remember the policy and because Defendant introduced no evidence that it conducted specific anti-harassment training. However, Plaintiff does not dispute that she was shown the policy and acknowledged it in writing more than once. Nor does Plaintiff cite to any authority stating that reasonable care requires an employer to conduct anti-harassment trainings. Accordingly, this Court finds that on the undisputed facts, Defendant LaShip has satisfied the first prong of the *Ellerth/Faragher* defense.

Questions of material fact, however, do exist as to the second prong of the defense: whether Plaintiff unreasonably failed to take advantage of Defendant's corrective policies. The policy states that it was Plaintiff's responsibility to "notify someone who can address this issue." Plaintiff testifies in her deposition that she first brought the harassment to the attention of her

---

[32] Doc. 58-6 at 1.
[33] *See* Doc. 53-3 at 90–92, 95–98.

direct supervisor, then brought it to his attention again when nothing happened, and finally reported the harassment to the superior employee for whom she worked as a secretary. Plaintiff's failure to also report the harassment to Defendant's fraud and abuse hotline is not unreasonable as a matter of law.[34]

Accordingly, Defendant LaShip's motion for summary judgment that it is not vicariously liable for Adams's conduct under Title VII or state anti-discrimination law is denied.

**C. Whether Plaintiff's Retaliation Claims Are Procedurally Barred**

Defendants move for summary judgment dismissing Plaintiff's claims for retaliation in violation of Title VII and Louisiana Revised Statutes § 23:332(A)(2) because Plaintiff failed to exhaust her administrative remedies with respect to those claims. Title VII requires private sector employees to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") before seeking judicial relief.[35] "[T]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[36] "[D]iscrimination and retaliation claims are distinct, and the allegation of one in an EEO charge does not exhaust a plaintiff's remedies as to the other."[37] Similarly, Louisiana Revised Statutes § 23:303(C) requires a plaintiff to give written notice to an employer of plaintiff's intent to sue for discrimination at

---

[34] That Plaintiff reported the harassment to two different people who could arguably "address the issue" distinguishes Plaintiff's claim from that of the plaintiff in *Lauderdale*, 512 F.3d at 165, who failed to report the harassment to a second person once the first was unresponsive.
[35] McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008).
[36] Mack v. John L. Wortham & Son, L.P., 541 F. App'x 348, 358 (5th Cir. 2013).
[37] Lavigne v. Cajun Deep Foundations, L.L.C., 654 F. App'x 640, 648 (5th Cir. 2016) (per curiam) (quoting Bouvier v. Northrup Grumman Ship Sys., Inc., 350 Fed. App'x 917, 921 (5th Cir. 2009) (per curiam)).

least thirty days before filing suit.[38] An EEOC charge may satisfy this requirement, but only as to the claims detailed in the charge.[39]

Defendant submits evidence that in Plaintiff's EEOC charge, Plaintiff only checked the box for sex discrimination and did not check the box for retaliation.[40] Plaintiff offers no response. Furthermore, more than 300 days have passed since any potential act of retaliation and therefore Plaintiff can no longer file a timely EEOC charge.[41] Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's retaliation claims is granted. Plaintiff's claim for retaliation under Title VII is dismissed with prejudice for the failure to exhaust administrative remedies. Defendants have not argued that Plaintiff is barred from providing notice and refiling her state retaliation claim. Accordingly, Plaintiff's claim for retaliation under Louisiana Revised Statutes § 23:332(A)(2) is dismissed without prejudice as premature.

## D. Whether Plaintiff States a Title VII Retaliation Claim

The Court dismissed Plaintiff's retaliation claims above for the failure to exhaust administrative remedies and therefore does not reach the issue of whether Plaintiff stated a claim for retaliation.

## E. Plaintiff's Back Pay After Reinstatement Offer

Defendants move for summary judgment that, in the event Defendants are liable, Plaintiff is not entitled to back pay or "front pay" because Plaintiff refused an unconditional offer of employment from Defendant LaShip's parent corporation. "[A] claimant 'forfeits his right to back pay if he refuses a job

---

[38] LA. REV. STAT. § 23:303(C).
[39] *See* Stubberfield v. Offshore, No. 15-2339, 2016 WL 2855480, at *2 (E.D. La. May 16, 2016); Johnson v. Hosp. Corp. of Am., 767 F. Supp. 2d 678, 704 (W.D. La. 2011).
[40] *See* Doc. 53-3 at 125–26.
[41] *See* 42 U.S.C. § 2000e-5(e) (establishing 300 days as the longest period in which a timely EEOC charge may be filed).

substantially equivalent to the one he was denied.'"[42] Grounded in a plaintiff's duty to mitigate his damages, the forfeiture applies from the time that the offer of reinstatement is extended.[43] Defendants submit evidence that LaShip's parent company offered to reinstate Plaintiff to an equivalent position at an affiliated company closer to her home with the same pay as when she departed LaShip.[44] Plaintiff does not respond to this particular ground for summary judgment. Accordingly, Defendants' motion for summary judgment as to back pay is granted. Plaintiff is ineligible for damages in the form of lost wages for any period after July 27, 2015.

**F. Claims for Sexual Harassment and Battery Under Criminal Statutes**

Defendants move for summary judgment dismissing Plaintiff's claims for sexual battery in violation of Louisiana Revised Statutes §§ 14:43.1 and 14:43.1.1 because no law enforcement agency pursued criminal charges against Defendant Adams. "Criminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability; but they may be guidelines for the court in fixing civil liability."[45] The statues to which Plaintiff refers relate in substance the elements of the intentional tort of battery: an intentional harmful or offensive contact with another.[46] Plaintiff's Complaint alleges exactly that. Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's claims for the intentional tort of sexual battery is denied.

---

[42] Figgs v. Quick Fill Corp., 766 F.2d 901, 902 (5th Cir. 1985) (quoting Ford Motor Co. v. EEOC, 458 U.S. 219, 232 (1982)).
[43] *See id.*
[44] *See* Doc. 53-3 at 123–24.
[45] Gugliuzza v. K.C.M.C., Inc., 606 So. 2d 790, 793 (La. 1992).
[46] *See* Lawson v. Straus, 673 So. 2d 223, 226–27 (La. App. 4 Cir. 1996); *see also* Louisiana v. Guidry, 489 F.3d 692, 699 (5th Cir. 2007) ("Under Louisiana law, criminal statutes may provide the standard of care in a tort action when the other fundamental elements of a tort (duty of care, damages) are present.").

## G. Whether Plaintiff's Claims for Defendant LaShip's Negligence Are Barred by the Louisiana Workers' Compensation Act

Defendant LaShip moves for summary judgment dismissing Plaintiff's claims for its negligence in failing to supervise, investigate, and provide a safe workplace because the exclusive remedy for an employer's negligence is the Louisiana Workers' Compensation Act. Louisiana Revised Statutes § 23:1032 "makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act."[47] Plaintiff's claims that Defendant LaShip was negligent in failing to prevent or correct the harassment are not claims for intentional acts, and therefore are precluded by § 23:1032. Plaintiff offers no response. Accordingly, Defendant's motion for summary judgment dismissing Plaintiff's claims against Defendant LaShip for its own negligence is granted. Such claims are dismissed with prejudice.

## H. Whether Defendant LaShip is Vicariously Liable for the Intentional Torts of Defendant Adams

Defendant LaShip moves for summary judgment that it is not vicariously liable for any intentional torts committed by Defendant Adams because Adams was not acting in the scope of his employment.

An employer's vicarious liability for the intentional torts of an employee is not foreclosed by the Louisiana Workers' Compensation Act.[48] However, an employer is only vicariously liable for acts committed within the course and scope of employment.[49] The scope inquiry examines whether an employee was "acting within the ambit of his assigned duties and also in furtherance of his

---

[47] White v. Monsanto Co., 585 So. 2d 1205, 1208 (La. 1991).
[48] *See* Harper v. Boise Paper Holdings, L.L.C., 575 F. App'x 261, 263 (5th Cir. 2014) (per curiam).
[49] Baumeister v. Plunkett, 673 So. 2d 994, 996 (La. 1996).

employer's objective."[50] The following factors are relevant when determining whether an employer is liable for an employee's intentional tort: "(1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment."[51]

Louisiana courts have both imposed and withheld vicarious liability for sexual batteries committed on the job. In *Baumeister v. Plunkett*, the Louisiana Supreme Court held that a hospital was not vicariously liable when a nurse supervisor sexually battered a co-employee in the break room.[52] The court reasoned that the risk that a supervisor would assault an employee was not connected to the performance of the supervisor's duties and did not serve the employer's business at all.[53] The court specifically declined to adopt a general rule that sexual battery is always of a personal nature and therefore that an employer is never vicariously liable.[54] In finding that the battery was not connected to the employment, the court looked to the fact that the supervisor in that case "did not order plaintiff into the lounge or threaten plaintiff with the loss of her job if she did not respond to his sexual advances."[55]

In *Edmond v. Pathfinder Energy Services, Inc*, on the other hand, the court held that a question of material fact existed as to whether an employer was vicariously liable for a sexual battery committed at work by a supervisor and co-employees.[56] The supervisor in that case ordered the plaintiff to go into

---

[50] *Baumeister*, 673 So. 2d at 996 (quoting Scott v. Commercial Union Ins. Co., 415 So. 2d 327, 329 (La. App. 2d Cir. 1982)).
[51] *Baumeister*, 673 So. 2d at 996–97.
[52] *Baumeister*, 673 So. 2d at 999.
[53] *Baumeister*, 673 So. 2d at 999.
[54] *Baumeister*, 673 So. 2d at 1000.
[55] *Baumeister*, 673 So. 2d at 1000.
[56] Edmond v. Pathfinder Energy Servs., Inc., 73 So. 3d 424, 429 (La. App. 3 Cir. 2011).

a shop where the other employees were waiting to batter him.[57] The court reasoned that the use of supervisory power to facilitate the attack distinguished the case from *Baumeister*.[58]

Here, plaintiff submits evidence that Defendant Adams intertwined his supervisory power with his sexual harassment and battery. According to Plaintiff's deposition, Adams offered Plaintiff protection from being laid off in exchange for submitting to his sexual requests and said that he was protected from consequences because he was "the boss."[59] As Defendants do not concede the facts as Plaintiff relates them, there is a dispute over facts material to the question of whether Adams's actions so closely rooted in his employment that LaShip may be vicariously liable for his intentional torts. Accordingly, Defendant LaShip's motion for summary judgment that it is not vicariously liable for Adams's intentional torts is denied.

## I. Whether Plaintiff States a Claim for Intentional Infliction of Emotional Distress

Defendants move for summary judgment that Plaintiff's allegations do not meet the high bar for recovering on a claim of intentional infliction of emotional distress.

> [I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[60]

---

[57] *Edmond*, 73 So. 3d at 425.
[58] *Edmond*, 73 So. 3d at 429.
[59] Doc. 58-3 at 3–4.
[60] White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

The acts complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[61] "Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time."[62] However, the Louisiana Supreme Court has recognized that "sexual harassment as a categorization of employer/supervisor misconduct is perhaps the most often recognized claim under a theory of intentional infliction of emotional distress," citing to two cases holding that evidence of unwanted, repeated sexual comments and touching was sufficient for a jury to find intentional infliction of emotional distress.[63]

Defendant primarily relies on two cases to demonstrate that the facts alleged by Plaintiff are insufficient to state a claim for intentional infliction of emotional distress, but neither are sufficiently similar to the facts here to be dispositive. In *Smith v. Amedisys Inc.*, the court upheld summary judgment that the plaintiff failed to present evidence on the second prong of the *White* test, that plaintiff's emotional stress be severe.[64] The court said nothing about whether defendants' conduct was sufficiently outrageous, as Defendants argue here.[65]

---

[61] Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1022 (La. 2000) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. D).

[62] Smith v. Amedisys Inc., 298 F.3d 434, 449 (5th Cir. 2002) (quoting *White*, 585 So. 2d at 1210).

[63] Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1026 n.12 (La. 2000) (citing Prunty v. Ark. Freightways, Inc., 16 F.3d 649 (5th Cir. 1994); Barb v. Miles, Inc., 861 F. Supp. 356 (W.D. Pa. 1994)).

[64] *Smith*, 298 F.3d at 449.

[65] *See Smith*, 298 F.3d at 449–50. Although Defendants do not argue this point, Plaintiff's evidence that she required psychiatric treatment, including medication, for the insomnia

In *Griffith v. Louisiana*, the court dismissed plaintiffs claim for intentional infliction of emotional distress because the alleged conduct was not severe enough to be actionable.[66] There, plaintiff had suffered repeated sexual comments from one supervisor, but did not want to testify before an ethics board about the matter.[67] After she did testify in response to a subpoena, the supervisor kissed her forehead in what plaintiff interpreted as an act of intimidation.[68] Plaintiff alleged that in retaliation for her reluctance to cooperate with the investigation, other supervisors created a hostile work environment by, *inter alia*, "throwing checks at her, accusing her of misplacing checks, . . . accusing her of exceeding her authority," and terminating her for a work mistake without the chance to correct it.[69] The court interpreted plaintiff's intentional infliction of emotional distress claim as arising primarily from the non-sexual harassment of the second set of supervisors, rather than the sexual comments of the first.[70] It reasoned that "conflict in a pressure-packed work environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable."[71]

The sole act of physical touching in *Griffin* was a kiss to the forehead, which plaintiff herself interpreted as intimidating rather than sexual. Here, Plaintiff alleges that Defendant Adams repeatedly grabbed her private areas and forced her to touch his. Further, the bulk of the harassment that the court focused on in *Griffin* was ordinary workplace conflict. In contrast, Plaintiff

---

and anxiety that resulted from the alleged harassment and battery is stronger than that of the plaintiff in *Smith*. *See id.*
[66] Griffith v. Louisiana, 808 F. Supp. 2d 926, 937 (E.D. La. 2011).
[67] *Griffith*, 808 F. Supp. at 930–31.
[68] *Griffith*, 808 F. Supp. at 934.
[69] *See Griffith*, 808 F. Supp. at 930–31, 934.
[70] *Griffith*, 808 F. Supp. at 934.
[71] *Griffith*, 808 F. Supp. at 937 (quoting Washington v. Mother Works, Inc., 197 F. Supp. 2d 569, 572–73 (E.D. La. 2002)).

here alleges that Adams repeatedly demanded sex in exchange for preferential treatment and exposed his own genitals to Plaintiff. Defendants have not demonstrated that Plaintiff's allegations fail to state a claim for intentional infliction of emotional distress as a matter of law. Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's claims for intentional infliction of emotional distress is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion is GRANTED IN PART.

Plaintiff's claims under § 1981, for retaliation under Title VII, and for Defendant LaShip's negligence are DISMISSED WITH PREJUDICE.

Plaintiff's claim for retaliation under state law is DISMISSED WITHOUT PREJUDICE.

Summary judgment is GRANTED that Plaintiff is not entitled to damages in the form of lost wages for any period after July 27, 2015.

Defendants' Motion is DENIED in all other respects.

New Orleans, Louisiana this 7th day of June, 2018.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**